UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DEACEA McKINNEY, | : | Case No. 1:17-cv-222 |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | Magistrate Judge Stephanie K. Bowman |
| vs. | : | |
| SECURITAS SECURITY SERVICES USA, INC., *et al.*, | : | |
| Defendants. | : | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS (Doc. 11)**

This civil action is before the Court on Defendant The Proctor & Gamble Company ("P&G")'s motion to dismiss (Doc. 11) and the parties' responsive memoranda (Doc. 14 and 16).

## I. BACKGROUND

For the purpose of this motion to dismiss, the Court must: (1) view the complaint in the light most favorable to Plaintiff; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers,* 561 F.3d 478, 488 (6th Cir. 2009).

### a. Plaintiff's Factual Allegations in Amended Complaint (Doc. 9)

P&G uses contracted labor staffing for facilities management tasks at its various locations including the buildings located at Winton Hill Business Center in Cincinnati, Ohio. Defendant Jones Lang LaSalle Americas, Inc. ("JLL") contracted to provide facilities management services for P&G. The contract required JLL to abide by P&G standards regarding the conduct of subcontractor employees as set forth in an operating

agreement between P&G and JLL.  JLL subcontracted with Defendant Securitas Security Services USA, Inc. ("Securitas") to provide security services and personnel for P&G.

Plaintiff DeAcea McKinney worked for Securitas as a security officer at the Winton Hill Business Center from May 23, 2016 to June 9, 2016.  (Doc. 9, at 4–6).  As alleged, P&G, in conjunction with JLL and Securitas, determined the essential terms and conditions of Plaintiff's employment, including: scheduling; assignment of work; manner of work performance; and order essential duties.  (*Id.* at 5).  As further alleged, each Defendant shared the authority to fire, discipline, direct, and supervise Plaintiff.  (*Id.*).

Doctors diagnosed Plaintiff with rheumatoid arthritis as a child.  (*Id.* at 4).  After several years with the disease in remission, Plaintiff suffered a relapse in January 2016.  (*Id.*).  As a result of her disability, Plaintiff began to use an assistive device when she needed to walk for long periods of time.  (*Id.*).  Plaintiff interviewed for her position with Securitas on May 3, 2016 with Alejandro Neri, a Securitas employee.  (*Id.*).  During the interview, Plaintiff informed Mr. Neri of her disability and its effect on Plaintiff's ability to walk for long periods of time and her occasional use of an assisted walking device.  (*Id.*).  Securitas told Plaintiff that the disability would not be preclusive of employment.  (*Id.*).

On May 23, 2016, Securitas hired Plaintiff, and she started work the next day.  (*Id.* at 4–5).  Plaintiff's direct supervisor was site supervisor Tara Tom, a Securitas employee.  (*Id.* at 5).  Plaintiff's main responsibility was monitoring individuals who swiped their badges as they entered the building to ensure their access was authorized.  (*Id.*).  The

position required the security officer to stay at his or her position until relieved from his or her post. (*Id.*). Plaintiff's duties also included a daily rotation through security posts in different buildings. (*Id.*). A Securitas employee provided transportation between the buildings on a motorized cart. (*Id.*).

On May 25, 2016, Plaintiff began using a walker from home during the workday. Plaintiff used her walker to help her walk from a building's entrance to her designated security post during her daily rotations, but did not use it when carrying out her duties at any individual post. (*Id.* at 5–6). On June 1, 2016, Theresa Fahrendorf, a JLL employee who oversaw the individuals employed under the JLL/Securitas Contract pursuant to P&G's agreement with JLL, contacted Securitas and indicated that Plaintiff may not be fit for duty Plaintiff's use of a walker. On June 8, 2016, Ms. Farendorf encountered Plaintiff in a hallway as Plaintiff was using her walker and made a disparaging remark. (*Id.* at 6). On June 9, 2016, Justin Thacker, the Human Resources Manager for Securitas, informed Plaintiff that she was being removed from her placement at P&G's Winton Hills Business Center effective immediately. (*Id.*).

On June 13, 2016, Plaintiff met again with Mr. Thacker to discuss her reassignment from P&G. (*Id.* at 7). Mr. Thacker informed Plaintiff that she was removed in accordance with "P&G's standards" because her use of a walker prevented Plaintiff from meeting the requirement that all security officers must be able to respond to emergent situations within four minutes, and employees "may be required to demonstrate these skills in drills, from time to time, as required by [P&G]." (*Id.*). Plaintiff was not

3

reassigned to another position and is no longer employed with Securitas.

Plaintiff filed her initial complaint on April 5, 2017, naming P&G and Securitas as Defendants. (Doc. 1). On June 12, 2017, Plaintiff filed an amended complaint to include JLL as an additional defendant. (Doc. 9). On July 14, 2017, Defendant Securitas filed its Answer to Plaintiff's Amended Complaint, in which Securitas admitted that it was an employer of Plaintiff. (Doc. 13). Plaintiff seeks damages against Defendants for unlawful disability discrimination and failure to accommodate under the Americans with Disabilities Act (ADA) and Ohio Rev. Code § 4112.02. (*See* Doc. 9, at 8–11).

On June 23, 2017, P&G, in lieu of filing an answer, submitted a motion to dismiss all claims under Fed. R. Civ. P. 12(b)(6). (Doc. 11). On July 14, 2017, Plaintiff filed her response in opposition to P&G's motion to dismiss. (Doc. 14). On July 31, 2017, Plaintiff filed her reply. (Doc. 16).

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that

the pleader is entitled to relief."[1]

---

[1] Defendant's motion to dismiss included two affidavits purportedly supporting the claim that P&G was not a joint employer of Plaintiff. Lawrence J. Bridge, the Global P&G Governance Manager for the P&G Facilities and Real Estate Organization, submitted an affidavit testifying that P&G's contract with JLL specifically states that P&G has no supervisory power over the employees hired by JLL or its subcontractors such as Securitas. (Doc. 11-2, at 2). Additionally, Theresa Fahrendorf, Plaintiff's supervisor, who was employed by JLL, testified through affidavit that she instructed Securitas to address her perceived issue with Plaintiff's fitness for duty without consulting anyone from P&G in any way. (Doc. 11-3). These documents are not properly considered by this Court in adjudicating the pending motion to dismiss, the analysis of which looks only to the active complaint and any documents referenced in the complaint.

In P&G reply (Doc. 16) to Plaintiff's memorandum contra the motion to dismiss (Doc. 14), P&G requests that this Court convert P&G's motion to dismiss into a motion for summary judgment and dismiss P&G from the case on the basis of the affidavits. (Doc. 16, at 2–3 (citing *Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, fn. 1 (6th Cir. 1997))). However, the decision to "convert the motion and consider matters outside the pleadings is within the discretion of the trial court." *Riestenberg v. Broadview Federal Savings and Loan*, 1988 WL 28803 at *1 (6th Cir. 1998). And, here, the Court determines, in its discretion, that such a conversion would be inappropriate at this stage of the litigation, given the limited information before the Court.

In *Swallows*, cited by P&G, the court appears to have been able to examine the agreement establishing the relationship between the plaintiff's direct employer and the co-defendant that successfully argued there was no employment relationship between itself and the plaintiff. *See Swallows*, 128 F.3d at 992, 995. Here, the only evidence submitted by P&G are two affidavits testifying about the content of an alleged agreement, which affidavits include only part of one paragraph of the agreement's actual language. Moreover, the testimony contained in the affidavits is clearly controverted by the amended complaint, which alleges that P&G "had direct control over many matters governing the essential terms and conditions of [Plaintiff's] employment[,]" including the authority to hire, fire, direct, and supervise Plaintiff. (Doc. 9, at 5).

With the limited information now presenting, the Court cannot determine definitively whether P&G's assertions regarding the nature of its relationship with JLL/Securitas are accurate. The affidavits submitted by P&G are certainly evidence in support of a defense to liability in this case. However, given the current lack of conclusive evidence that might motivate the Court to convert P&G's motion to dismiss into a motion for summary judgment, the Court concludes, in its discretion, that Plaintiff shall be afforded "notice and an opportunity to supplement the record" to aid in determining what, if any, evidence supports her allegations. *Wysocki v. International Business Machine Corp.*, 607 F.3d 1102, 1105 (6th Cir. 2010).

Accordingly, the Court evaluates P&G's motion to dismiss based solely on the allegations stated in the complaint and employs the standard of review applicable to motions to dismiss.

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id*. (*citing* Fed. R. Civ. P. 8(a)(2)).

## III. ANALYSIS

P&G alleges it is not liable for Plaintiff's claims because it is not Plaintiff's employer. (Doc. 11). P&G's argument is summarized at the outset of the motion to dismiss: "P&G never employed [Plaintiff] or [Theresa] Fahrendorf [the individual who allegedly had Plaintiff terminated]. P&G was not involved in [Plaintiff's] hiring, placement or removal. P&G played no role in any action about which [Plaintiff] complains." (Doc. 11, at 1).

In order to hold P&G liable under the ADA or Ohio Rev. Code § 4112.02, Plaintiff must show that P&G was her "employer." An "employer" as defined by the ADA is "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). "Employer" is defined under Ohio Law as ". . . any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." Ohio Revised Code § 4112.01(A)(2).[2]

The usual basis to establish an employment relationship under the ADA is through direct employment, which is not being alleged here as Defendant Securitas is admitted to be Plaintiff's direct employer. *Swallows v. Barns & Noble Book Stores, Inc.,* 128 F.3d 990, 993 (6th Cir. 1997). Outside of direct employment, the courts have found an employer relationship using under both the "single employer" and "joint employer" doctrines. *Id.*; *see also N.L.R.B. v. Browning-Ferris Industries of Pennsylvania, Inc.*, 691

---

[2] Since Ohio uses the same analysis for its anti-discrimination law as the ADA, the state and federal claims will be viewed under the same analysis. `

F.2 1117, 1122 (3rd Cir. 1982) ("'joint employer' and 'single employer' concepts are distinct . . . the two concepts approach the issue of 'who is the employer,' from two different viewpoints"). It is undisputed that Defendants Securitas and JLL were not a "single employer" in this case. Plaintiff argues, however, that all of the Defendants, including P&G, were "joint employers" of Plaintiff, and, therefore, are equally liable for any employment discrimination Plaintiff has suffered. (Doc. 14, at 4).

When "two or more employers exert significant control over the same employees—where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment—they constitute 'joint employers' within the meaning of the NLRA." *Carrier Corp. v. N.L.R.B.*, 768 F.2d 778, 781 (6th Cir. 1985) (citing *Browning-Ferris,* 691 F.2d at 1124). "A determination of whether or not a joint employment relationship exists is not determined by the application of any single criterion, but rather the entire relationship is to be viewed in its totality." 29 C.F.R. § 825.106 (b)(1). In the holistic review of the relationship, "the regulations describe three employment relationships where joint employment will 'generally . . . be considered to exist.'" *Grace v. USCAR*, 521 F.3d 655, 665 (6th Cir. 2008) (citing 29 C.F.R. § 825.106(a)). These situations are:

> (1) When there is an arrangement between employers to share an employee's services or to interchange employees;
> (2) *Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee;* or
> (3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or

8

> indirectly, because one employer controls, is controlled by, or is under common control with the other employer.

*Id.* (citing 29 C.F.R. § 825.106(a) (emphasis in original). In accordance with the above guidelines, reviewing courts have considered factors such as "authority to hire, fire and discipline employees, promulgation of work rules and conditions of employment, issuance of work assignments and instructions, and supervision of employees' day-to-day activities" in determining the presence of a joint employer relationship. *Russell v. Bronson Heating and Cooling*, 345 F. Supp. 2d 761, 771 (E.D. Mich. 2004) (quoting *EEOC v. Regency Windsor Mgmt. Co.*, 862 F. Supp. 189, 191 (W.D. Mich. 1994).

Accordingly, a reviewing court's determination of whether a joint employer relationship arises is highly dependent on the facts of any particular case. *Compare Bradford v. Prosoft, LLC*, 2017 WL 1458201 at *5 (W.D. KY 2017) (finding that Plaintiff was an employee of both "employers" due to a joint employer relationship, where one entity was contracted by the other); *Browning-Ferris,* 691 F.2d at 1124–25 (finding a joint relationship where the employer "exerted significant control over the work of the drivers"); *Grace*, 521 F.3d at 662–63 (finding joint employment in a situation where "two entities—a staffing agency and client employer—exercised some level of joint control over a common employee"); *Williams v. City of Columbus*, 892 F. Supp. 2d 918, 929 (S.D. Ohio 2012) (denying motion for summary judgment because a reasonable jury could find that the municipal court and the city were joint employers of the employee); *Carrier Corp.,* 768 F.2d at 781 (finding a joint employer relationship where the employer exercised "substantial day-to-day control over the employee's working

conditions," consulted with the other employer "over wages and fringe benefits," and "[the employer] had the authority to reject any driver that did not meet its standards" (emphasis added)); *with Zolner v. U.S. Bank Nat'l Ass'n.*, 2015 WL 7758543 at *3 (W.D. KY 2015) (granting motion to dismiss where it was "clear that plaintiff was not an employee" and Plaintiff failed to plead facts to support any theory of employer relationship); *Alexander v. Rush North Shore Med. Ctr.*, 101 F.3d 487, 487 (7th Cir. 1996) (finding a physician whose hospital privileges had been revoked was not an employee of the hospital because it did not have "the right to control" the physician); *Shah v. Deaconess Hosp.,* 355 F.3d 496, 500 (6th Cir. 2004) (finding no employer/employee relationship because, under the contractual relationship which allowed the physician to use a hospital's facilities, the hospital did not have any right to control the manner and means of physician's performance); *Astrowsky v. First Portland Mortgage Corp.*, 887 F. Supp. 332, 337 (D. ME. 1995) (finding no relationship where there was no meaningful control).

P&G cites *McFarland v. Breads of the World, LLC*, 2011 WL 801815 (S.D. Ohio 2011), and *Baetzel v. Home Instead Senior Care*, 370 F. Supp. 2d 631 (N.D. Ohio 2005), to support its argument that P&G is not a joint employer of Plaintiff. (Doc. 11-1, at 3). However, these cases are distinguishable from the present case, as each reviewing court in those cases found that there was no employment relationship based on the "single employer" doctrine, and that doctrine is not relied upon by Plaintiff in her amended complaint.

P&G also cites several cases applying the joint employer doctrine that are distinguishable from the present case because they involve a motion for summary judgment[3] where significant evidence demonstrated beyond a dispute of material fact that no employment relationship existed between the parties. *See Taylor v. Colorado State Univ.,* 2012 WL 6115596 at *9 (W.D. KY 2012) (motion for summary judgment granted because "the facts here simply do not show that [the two entities] shared or codetermined the essential terms and conditions of [plaintiff's] employment," and allegations were not supported by any evidence in the record); *Schivelbein v. HCF Mgmt.,* 2015 WL 7430085 at *4 (N.D. Ohio 2015) (motion for summary judgment granted because "[plaintiff] has presented no evidence [defendant] played any role whatsoever in the hiring decision"); *see also Mohammed v. Verst Group Logistics, Inc.*, 2017 WL 1449759 at *5 (S.D. Ohio 2011).

In this case, Plaintiff alleges that she was functionally a former employee of Securitas, JLL, and P&G (Doc. 9, at 2, 4). Plaintiff worked specifically at P&G's buildings located at Winton Hill Business Center in Cincinnati, Ohio, and she made rounds around P&G's Winton Hills Business Center Campus. (*Id.* at 5). She worked at this location until she was pulled from employment at the location, and subsequently terminated. (*Id.* at 6). Plaintiff alleges that she was terminated due to the intervention of Theresa Fahrendorf, a JLL employee, who instructed Securitas, her direct employer, to remove her from employment. (*Id.*). Plaintiff was informed that the reason Ms.

---

[3] As previously discussed, P&G's request to convert its motion into a motion for summary judgment is inappropriate at this time. *See supra* fn. 2.

Fahrendorf requested her removal was due a policy established by P&G that would allow it to test employees to make sure that they could comply with the policy, "as required by Procter & Gamble." (*Id.*at 7). These allegations, taken as true for purposes of adjudicating this motion, would allow a finder of fact to conclude that P&G had sufficient control over the essential terms and conditions of Plaintiff's employment such that it acted as a joint employer with JLL and Securitas. Accordingly, Plaintiff's complaint raises claims that, if true, could entitle her to relief. P&G's motion to dismiss is therefore denied.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, Defendant P&G's motion to dismiss (Doc. 11) is **DENIED**.

**IT IS SO ORDERED.**

Date: 12/1/17

*Timothy S. Black*
Timothy S. Black
United States District Judge